UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL G. TURNER,** | **2:23-CV-12425-TGB-KGA** |
| Plaintiff, | HON. TERRENCE G. BERG |
| vs. | |
| **FAMILY DOLLAR STORES, INC. and FAMILY DOLLAR OPERATIONS, LLC,** | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 19)** |
| Defendants. | |

Plaintiff Michael Turner worked for Defendant Family Dollar Operations, LLC as a Zone Operations Director for over four years before he was terminated in June 2023 for alleged unprofessional behavior at a work conference in Chicago. Turner complains that he was discriminated against based on his age and weight and wrongfully terminated in retaliation for complaining about that discrimination. He asserts claims against Family Dollar for discrimination and retaliation in violation of federal and state employment laws.

Defendants Family Dollar Stores, LLC, incorrectly identified as Family Dollar Stores, Inc., and Family Dollar Operations, LLC (collectively, "Family Dollar") have moved for summary judgment as to all of Turner's claims. For the reasons below, Defendants' motion will be **GRANTED IN PART** and **DENIED IN PART**.

# I.    BACKGROUND

## A. Factual Background

The Court recounts the relevant facts in the light most favorable to Plaintiff Michael Turner, the non-movant. *See Jackson v. City of Cleveland*, 925 F.3d 793, 803 (6th Cir. 2019).

### 1. Turner's employment with Family Dollar

Turner started working for Family Dollar in December of 2018 as a Zone Operations Director. He was 55 years old when hired. First Amended Complaint ("FAC") ¶¶ 11, 13, ECF No. 13. In that role, Turner was responsible for providing support for sales and operational programs within his assigned zone, which included stores in Michigan, Ohio, Illinois, Missouri, Minnesota, Wisconsin, Iowa, South Dakota, North Dakota, Wyoming, Colorado, and Washington. *Id.* ¶¶ 15–16; Job Posting, ECF No. 19-2, PageID.172. Turner states that although he "technically" reported to Vice President of Enterprise Store Development and Sales Tom Balchak, Zone Vice President ("ZVP") Jennifer Unger acted as his direct manager and supervised most of his work. Turner Decl. ¶ 11, ECF No. 20-2; *see also* Job Posting, ECF No. 19-2, PageID.172 (stating that the Zone Operations Director reports to the Zone Vice President).

Turner asserts that he consistently received excellent performance reviews and "the highest marks for professionalism" during his tenure with Family Dollar, and that he was rated as "Exceeds expectations" in

the four annual performance reviews he received. Turner Decl. ¶¶ 9–10, ECF No. 20-2.

## 2. Age and weight related remarks and jokes

Turner, who weighs approximately 280 pounds, complains that during his time working for Family Dollar he was subjected to repeated ageist remarks, comments, and jokes and offensive remarks and jokes about his weight by coworkers and other senior managers, including Unger, Senior Vice President ("SVP") Pete Barnett, and Region Directors ("RDs") Brian Blausey, Jake Eckels, and Kendall Jackson. *Id.* ¶¶ 15–17. These individuals called him "fat," reminded him that he was the oldest person on the team, and called him nicknames like "Uncle Mike" (because he reminded them of the obese and lazy lead character from the movie *Uncle Buck* played by John Candy) and "Cupid." *Id.* ¶¶ 18–22. No one else on the team had a nickname. *Id.* ¶ 20. RDs Blausey, Jackson, and Eckles also made fun of Turner's hair, asking if it was a toupee and joking that it was too blond for someone as old as he is and that it couldn't possibly be his real hair. *Id.* ¶¶ 24–25.

Turner states that he frequently complained to his supervisors, Balchak and Unger, throughout his employment about the offensive age- and weight-related comments and nicknames, in both one-on-one meetings and in group meetings, and that he told them that those comments and nicknames needed to stop. *Id.* ¶¶ 26–27. During Turner's annual review in 2022, Balchak warned Turner that he needed to be

careful working under Unger because she preferred younger directors and that Turner did not fit her vision of a Store Operations Director and that he was "too old" to be on her team. *Id.* ¶¶ 31–32. Turner asserts that Unger often made negative comments about his age and that he was one of the oldest directors, which made him feel self-conscious and that he was not a valued part of the team. *Id.* ¶ 33. Balchak and Unger deny that Turner complained to them about age- or weight-related comments or that they stated that Unger preferred working with younger employees. Balchak Decl. ¶¶ 4–5, ECF No. 21-2; Unger Decl. ¶¶ 3–7, ECF No. 21-3.

Turner further alleges that during at least four one-on-one meetings with Unger in 2022 and early 2023, Unger told Turner he was "too old" and that she wanted younger directors who were more "energetic" to drive sales. Turner Decl. ¶ 34, ECF No. 20-2. And on October 17, 2020, December 24, 2020, July 4, 2021, December 20, 2021, September 13, 2022, and December 27, 2022, Unger invited Turner, his fiancée, Amanda Wentland, and other colleagues to events at her house, during which Unger would ask Turner when he was going to retire. *Id.* ¶¶ 36–38. Turner would respond that he had no plans to retire and that he and Wentland needed his income. *Id.* ¶ 39. At one of those events, Unger offered to hire Wentland as a tutor for her children, to replace some income if Turner were to retire. *Id.* ¶ 40; Wentland Decl. ¶¶ 7–12, ECF No. 20-3. When Wentland declined, Unger became angry and told Turner and Wentland that Turner was too old to being doing this work

and that she would be better off replacing him. Turner Decl. ¶ 41, ECF No. 20-2; Wentland Decl. ¶ 12, ECF No. 20-3. Unger denies these allegations. Unger Decl. ¶¶ 10–12, ECF No. 21-3.

At a dinner at the company's headquarters in Chesapeake, Virginia in 2022, everyone laughed at Turner when Unger joked that Turner was so old he needed to take a nap in the car, and Barnett stated in December 2022 that Turner needed "glasses since you are so old" one time when Turner was driving at night. Turner Decl. ¶¶ 42–44, ECF No. 20-2. Unger again denies these allegations and asserts that Turner himself told a story about falling asleep in a car during a work trip when they both worked for a different employer, and that the story had nothing to do with Tuner's age. Unger Decl.  ¶ 8, ECF No. 21-3.

Turner asserts starting in late 2019 and continuing until his termination, he noticed that several other Store Operations Directors or senior level managers over the age of 50 who reported to Unger were either terminated or pressured to retire, including Rick Smith, Bill Maynard, Michael Huddleston, Scott Corley, Jim Hike, Frank Venturella, and Dale Sucherman. Turner Decl.¶¶ 45–46, ECF No. 20-2. Turner states that he overheard Unger tell Jim Hike in early 2023 that she wanted a younger team. *Id.*¶ 48. Then, in April 2023, Unger assigned Blausey, one of the youngest team members, all of Turner's weekly sales topics during the teams' weekly Zone 60 call. *Id.* ¶ 50. After that, Turner was generally not allowed to speak on the calls like he used to, and when

he did speak, Unger would cut him off, talk over him, or make jokes about his age and/or weight. *Id.* ¶¶ 51–52. By May 2023, Turner was the oldest person on Unger's "team" by at least 12–15 years. *Id.* ¶ 47. At that time, just a few days before the Chicago meeting, Turner reminded Unger of the offensive age and weight comments and nicknames and told her that the comments are illegal and needed to stop, but she ignored him. *Id.* ¶¶ 28–29. Unger denies that Turner made these complaints to her. Unger Decl. ¶ 3, ECF No. 21-3.

### 3. Failure to promote to a VP position

A vice president ("VP") position at Family Dollar became available in 2021. Turner Decl. ¶ 55, ECF No. 20-2. Turner spoke to Senior VP of Operations, Steve Farrell, about the position and inquired as to the procedure to apply for it. *Id.* ¶ 56. Farrell told Turner that there was no need to apply because he was already being considered for the position and that he would be interviewed when the interview process began. *Id.* ¶ 57. Based on Farrell's statement, Turner did not submit an application for the position. Balchak also told Turner that he was on the top of the list for the VP position because he was the best person for the job. *Id.* ¶ 58. Balchak denies he made this statement and denies that there was a "list" for the VP position. Balchak Decl. ¶ 6, ECF No. 21-2.

Turner was never interviewed for the VP position. Turner Decl. ¶ 59, ECF No. 20-2. Instead, Tania Phillips and Doug Lambert, both younger and less experienced employees, were promoted to the VP

position in 2022. *Id*. ¶¶ 59–60. Turner has a Bachelor's Degree in Business Administration and over 25 years of high-level retail experience, while he understands that Phillips and Lambert are in their 30's and 40's and Phillips lacks a four-year degree. *Id*. ¶¶ 60–61. Turner states that Balchak told him that Barnett wanted to go in a "younger" direction. *Id*. ¶ 63. Balchak denies making this statement. Balchak Decl. ¶ 7, ECF No. 21-2.

### 4. Turner's termination

A Family Dollar Zone Leadership meeting was held in Chicago on May 16–18, 2023, which was attended by Turner, several of his colleagues, and several vendors that supply merchandise to Family Dollar. Unger 6/2/23 email, ECF No. 19-3, PageID.174–75. Unger states that upon returning from the meeting, she contacted Balchak to discuss her concerns with Turner's behavior at the meeting, along with concerns brought to her by colleagues. *Id.*; 5/22/23 emails, ECF No. 19-4, PageID.177–78. Balchak in turn contacted HR Business Partner Melissa Burner regarding Unger's concerns, and Burner then met with Unger. 5/22/23 emails, ECF No. 19-4, PageID.177–78.

Human Resources personnel then launched an investigation into Turner's alleged inappropriate conduct towards vendors and associates during the May Zone Leadership meeting. Investigation Report, ECF No. 19-5. Twelve people, including Turner and Unger, were interviewed during the investigation regarding allegations that:

7

- Turner yelled at and publicly berated a vendor who was late and unprepared for a presentation;

- Turner yelled at and was aggressive and rude to other vendors;

- Turner spoke disparagingly about a required survey, saying "I don't give a f**k about that;"

- Turner had a heated exchange with Regional Director Jacob Eckles, yelling at him and berating him and saying Eckles was only 30 years old and didn't know what he was talking about;

- Turner met an associate, Darlene May, and told her "professionally speaking, you are the prettiest HR woman I've met;" and

- Turner made inappropriate gestures mocking mentally disabled persons, bringing his right hand to his chest and making noises.

*Id.*

According to the Report, Turner admitted telling May "You're very intelligent, you're very humble. You're going to do great. And you're pretty," and that it wasn't the most professional thing to say. The Report states that Turner denied the remaining allegations when interviewed. *Id.*

However, in his declaration, Turner denies *all* the allegations in the Report, including that he told an HR representative directly that she is pretty. Turner Decl. ¶¶ 65, 84, 94–99, ECF No. 20-2. Turner contends that Eckles and Jackson were "totally intoxicated" at a May 15th Team dinner and other times during the meeting. *Id.* ¶¶ 66, 87. Eckles and Jackson told Turner that he is "too old" and made fun of his clothes at the

8

May 17th Team Dinner. *Id.* ¶¶ 66–69. Unger was present when these comments were made and she just laughed. *Id.* ¶ 70. Turner pleaded with Unger to stop Eckles, Jackson, and Blausey from making fun of his age and weight and threatened to report all of them to human resources. *Id.* ¶¶ 71–74. He further states that a Family Dollar HR person stated that she liked "older men," and looked directly at Tuner when she said that, and that Blausey stated Turner played well for a "fat, old man" when talking about a group basketball game earlier that day. *Id.* ¶¶ 76–77, 82. He states that everyone, including Unger, laughed at Blausey's comment. *Id.* ¶ 83. Turner contends that Blausey, Eckles, and Jackson acted erratically and disrespectfully to vendors, customers, and colleagues during the entire Chicago meeting, and that Unger observed this. *Id.* ¶¶ 86–88. Turner asserts that he asked HR to interview witnesses such as Ira Wilson and Shawn Malone during the investigation, who would have corroborated his version of events, but they did not, and that HR also failed to include in the investigation Turner's allegations of discrimination. *Id.* ¶¶ 92–93.

The investigation concluded that the allegations that Turner acted unprofessionally and did not demonstrate company values with respect to the vendor were substantiated, and that this behavior was not abnormal for him. Report, ECF No. 19-5, PageID.186. The investigation found that Turner's allegations that the Zone Team was "completely hammered," that Eckles made inappropriate comments to Turner, and

that the vendor used unprofessional and vulgar language were unsubstantiated. *Id.* The members of HR who conducted the investigation—Melissa Burner, Kimberly Harpster, and Denise Spratley—recommended Turner's "Termination for violation of [Family Dollar's] Code of Business Conduct and the Anti-Harassment, Non-Discrimination and Non-Retaliation Policy." *Id.*; ECF No. 19-10, PageID.211.

This recommendation was approved first by Balchak and then by Farrell, ECF No. 19-10, PageID.211, and on June 12, 2023, Balchak called Turner and terminated him. Turner Decl. ¶ 100, ECF No. 20-2. Turner asserts that Balchak also stated that he knew the allegations against Turner were false and apologized for reporting him to HR. *Id.* ¶ 101. When Turner responded that Unger made up the allegations because she feared that Turner would report her, Turner claims that Balchak acknowledged he was right, but stated that he did not want to go against her. *Id.* ¶¶ 102–03. Balchak denies making these statements. Balchak Decl. ¶ 8, ECF No. 21-2.

### B. Procedural History

On September 25, 2023, Turner filed a two-count Complaint against Family Dollar alleging age and weight discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"). Compl., ECF No. 1.

10

On May 9, 2024, Turner filed a First Amended Complaint against Family Dollar, adding a third claim for age discrimination in violation of the ADEA. FAC, ECF No. 13. Count I alleges that Turner's employment was terminated because of his age and that Family Dollar retaliated against him for complaining of discrimination in violation of the ADEA. Count II alleges that Turner's employment was terminated because of his age, that he was not promoted because of his age, and that Family Dollar retaliated against him for complaining of age discrimination in violation of the Michigan ELCRA. And Count III alleges that Turner's employment was terminated because of his weight and that Family Dollar retaliated against him for complaining of weight discrimination in violation of the Michigan ELCRA.

Family Dollar now moves for summary judgment, arguing that all of Turner's claims should be dismissed because he has no direct evidence of discrimination or retaliation, cannot establish a prima facie case of retaliation, and cannot demonstrate that Family Dollar's reasons for terminating Turner's employment were a pretext for either age or weight discrimination or retaliation. ECF No. 19.

Turner filed a response in opposition to Family Dollar's motion, ECF No. 20, and Family Dollar filed a reply brief. ECF No. 21.

## II.   LEGAL STANDARD

A party is entitled to summary judgment it if "shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). No genuine material factual dispute exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the Court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. *Id.* The nonmoving party's evidence need not be in an admissible form. *Celotex v. Catrett*, 477 U.S. 317, 332 (1986). But he must "show that [he] *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

## III.  DISCUSSION

Turner brings claims of age discrimination and retaliation under the ADEA and the ELCRA, and also claims for discrimination and retaliation based on his weight under the ELCRA. The ADEA and ELCRA prohibit an employer from discriminating or retaliating against employees based on age, and the ELCRA prohibits discriminating or retaliating against an employee because of their weight. *See* 29 U.S.C. § 623(a)(1), (d); MCL §§ 37.2202(1)(a), 37.2701(a). Under both the ADEA and ELCRA, a plaintiff must show that but-for his age or weight, his employer would not have taken the adverse action. *Gross v. FBL Fin.*

*Servs., Inc.*, 557 U.S. 167, 177–78 (2009) (ADEA); *Drews v. Berrien Cnty.*, 839 F. App'x 1010, 1012 n.1 (6th Cir. 2021) (citing *Hecht v. Nat'l Heritage Acads., Inc.*, 886 N.W.2d 135, 146 (Mich. 2016) (affirming "but for causation" or "cause in fact" causation under the ELCRA)); *see also Rouch World, LLC v. Dep't of Civil Rights*, 987 N.W.2d 501, 509–10 (Mich. 2022) (adopting the but-for causation standard applied to federal discrimination claims for ELCRA discrimination claims). Satisfying but-for causation requires plaintiffs to show "that age [or weight] was the determinative reason they were terminated." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021); *see also Rouch World*, 987 N.W.2d at 510 (explaining that "the fact that the individual's [age or weight] is one of the causes of the discrimination—that 'but for' the individual's [age or weight], the action would not have occurred—is sufficient to satisfy Title VII; the existence of an additional but-for cause does not eliminate liability").

Courts analyze discrimination and retaliation claims under the same framework for both the federal and state statutes. *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 79 & n.5 (6th Cir. 2020); *Drews*, 839 F. App'x at 1012. A plaintiff may establish ADEA or ELCRA violations through either direct or circumstantial evidence. *Tilley v. Kalamazoo Cnty. Road Comm'n*, 777 F.3d 303, 307 (6th Cir. 2015) (citing *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)). Indirect evidence is evidence that requires "a factfinder to draw [ ] reasonable inference[s] that

discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). By contrast, direct evidence does not require a factfinder to draw any inferences to conclude that the employer wrongfully discriminated. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).

When a plaintiff relies on indirect evidence to show discrimination in violation of the ADEA or ELCRA, the *McDonnell Douglas* burden-shifting framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *see also Geiger*, 579 F.3d at 622 (applying *McDonnell Douglas* in the ADEA and ELCRA context). Under *McDonnell Douglas*, (1) a plaintiff must establish a prima facie case of discrimination; then (2) the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff; and (3) if the defendant does so, the burden of production shifts back to the plaintiff to show that the defendant's articulated reason was pretext for the adverse employment action. *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 298 (6th Cir. 2019).

### A. Direct Evidence

Family Dollar argues that Turner has no direct evidence of age or weight discrimination, or retaliation. "Direct evidence is evidence that, if believed, 'requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Thompson v. City of Lansing*, 410 F. App'x 922, 929 (6th Cir. 2011) (quoting *Wexler*, 317 F.3d

at 570). "Direct evidence is evidence that proves the existence of a fact without requiring any inferences" to be drawn. *Rowan*, 360 F.3d at 548. In other words, direct evidence is "smoking gun" evidence that "explains itself." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016) (quotation omitted).

To determine whether alleged remarks constitute "direct evidence" of discrimination, the Sixth Circuit considers the following criteria: "'(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.'" *Diebel v. L & H Resources, LLC*, 492 F. App'x 523, 527 (6th Cir. 2012) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002)). Proving a claim through direct evidence is generally a difficult standard to meet. *See Lewis v. City of Detroit*, 702 F. App'x 274, 280 (6th Cir. 2017) (holding that comments including, referring to plaintiff as a "'old cantankerous guy' and as "retired in place" do not "rise to the level of direct evidence necessary to prove a claim of [age] discrimination"); *but see Dunacan v ARD Logistics LLC*, No. 20-cv-13236, 2023 WL 2356667, at *2 (E.D. Mich. Mar. 3, 2023) (Leitman, J.) (finding that declaration from former employee that plaintiff's superiors "said that we needed some younger blood in [Duncan's] position and suggested that they

wanted to bring in someone younger to take [Duncan's] place," if believed, constituted direct evidence of age discrimination).

In its argument that Turner has no direct evidence of age or weight discrimination or retaliation, Family Dollar asserts only:

> Here, Plaintiff has neither alleged nor presented evidence that any statement was made by anyone (let alone a decision maker) that requires the conclusion (without making an inference) that his employment was terminated because of his age or weight, that he was not promoted because of his age or weight, or that he was retaliated against for complaining of age or weight discrimination.

ECF No. 19, PageID.160. Family Dollar does not otherwise discuss any specific allegations or facts in support of its perfunctory argument on direct evidence in its motion.

Turner argues in response that that both Unger and Balchak were his supervisors and that Unger's statements that Turner is "too old" and should retire and Balchak's warnings that Unger preferred younger employees are direct evidence of age discrimination. However, Turner does not argue in his response brief that he has direct evidence supporting his retaliation, failure-to-promote, or weight discrimination claims. Accordingly, the Court will only address whether Turner has direct evidence that he was terminated because of his age in violation of the ADEA or ELCRA.

In support of his claim of direct evidence of age discrimination, Turner states that:

- Unger stated at least four times in 2022 and early 2023 that Turner was "too old" and that she wanted younger directors who were more "energetic" to drive sales.

- Unger pressured Turner to retire at six different times between October 2020 and December 2022, and one time offered to hire Turner's fiancée should Turner retire, and then stated that Turner was too old to be doing this work and she would be better off replacing him.

- Unger joked during a company dinner in 2022 that Turner was "so old he needed to take a nap in the car."

- Balchak warned Turner during his annual review in 2022 that Unger had it out for him because of his age, thinking he was too old, and that she preferred younger directors on her team.

ECF No. 20, PageID.224 (citing Turner Decl. ¶¶ 30–32, 34–42, ECF No. 20-2 and Wentland Decl. ¶¶ 7–12, ECF No. 20-3).

Assuming these statements to be true, the Court must apply the Sixth Circuit's standard defining direct evidence of discrimination. Under that standard, the statements fall short of direct evidence of age discrimination. The Sixth Circuit has explained that:

> A "direct evidence" discrimination case requires proof "'which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" … An example of direct proof of outlawed discrimination would be evidence of an announcement by the decision-maker to the ex-employee. "I fired you because you are disabled [or are a member of some other legally protected minority classification]." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759–60 (6th Cir. 2000) (collecting Sixth Circuit decisions which mandated that only pertinent comments

17

proximately made by company decision-makers may constitute evidence of discriminatory animus by the defendant). "[M]erely vague, ambiguous, or isolated remarks" by a company agent which were not related to the decision-making process and were not made proximate to the assailed adverse employment action cannot constitute sufficient direct evidence of outlawed employment discrimination to create a jury question. *See Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330–31 (6th Cir. 1994).

*Das v. Ohio State Univ.*, 57 F. App'x 675, 678–79 (6th Cir. 2003). Turner has failed to proffer evidence of the character described above. Some the statements Turner cites, such as Unger's comments that he is "too old," if accepted as true and in the light most favorable to Turner, may be the kind of "ageist insults" courts have found sufficient to constitute direct evidence when made by a decisionmaker in connection with the alleged adverse action. *See, e.g., Williard v. Huntington Ford, Inc.*, 952 F.3d 795, 802, 807, 813–14 (6th Cir. 2020) (decisionmaker calling plaintiff "grandpa," "dinosaur," and "over the hill" "arguably constitute[s] direct evidence"). But in other ways, the alleged statements fall short. They were generally "vague, ambiguous or isolated remarks." Those made by Unger (a non-decisionmaker in Turner's termination) occurred at the latest in "early 2023," and by Balchak in 2022. Any the comments were not temporally near to Turner's June 2023 termination, and were not made in relation to Turner's termination. *See Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550–51 (6th Cir. 2004) ("Statements by non-decision makers, or statements by decision makers unrelated to the

18

decisional process itself can not suffice to satisfy the plaintiff's burden of demonstrating animus.") (brackets and internal quotations marks omitted).

Although Turner says he saw Unger as "his supervisor," there is no evidence that she was a decisionmaker in Turner's termination. Rather, Family Dollar has presented evidence that members of HR (Burner, Harpster, and Spratley) recommended Turner's termination, and that Balchak and then Farrell approved his termination. ECF No. 19-10, PageID.211. It is clear that Unger helped instigate the investigation into Turner following the May 2023 Chicago meeting, and participated in that investigation along with a number of other employees, but there is no evidence she was a decisionmaker in his termination. *See Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 581 (6th Cir. 2022) ("Discriminatory remarks, however, are direct evidence of discrimination only when they come from a supervisor with at least a 'meaningful role in the decisionmaking process.'"). "For example, a biased supervisor's unilateral recommendation to a manager with dismissal authority to fire a plaintiff constitutes direct evidence." *Id.* (citing *DiCarlo v. Potter*, 358 F.3d 408, 416 (6th Cir. 2004)). But there is no evidence in this case that Unger played such a meaningful role in the termination decision. Family Dollar has presented evidence that Unger did not have authority to hire, fire, or discipline Turner and that she was not a decisionmaker with respect to Turner's termination, Balchak Decl. ¶ 3, ECF No. 21-2, and

Turner has not produced any evidence to dispute this. Unger's statements and her alleged supervisory status alone do not compel a discrimination finding because multiple others (HR's recommendation, accepted by Balchak and Farrell) made the decision to terminate Turner.

Further none of Unger's alleged ageist statements, nor those made by Turner's coworkers, nor the "warning" from Balchak were made with any temporal or even tangential connection to Turner's termination. The only reason provided for Turner's termination was the result of the HR investigation regarding the Chicago meeting.

"Direct evidence is rare," *Pelcha v. MW Bancorp, Inc.*, 455 F. Supp. 3d 481, 497 (S.D. Ohio 2020), *aff'd*, 984 F.3d 1199 (6th Cir. 2021), *opinion amended and superseded*, 988 F.3d 318 (6th Cir. 2021), and a jury would simply have to make too many inferential leaps to find that Unger's comments that Turner was "too old" and her expressed desire for more "energetic" directors, or Balchak's "warning" that Unger preferred younger employees, provide direct evidence that the reason Turner was fired, months or years later, was because of his age. *See Bledsoe*, 42 F.4th at 581. "The Sixth Circuit has noted that an employer's statement that the employer likes younger employees for some reason is not the same as asserting that a particular older worker was or should be fired because of age." *Pelcha*, 455 F. Supp. 3d at 500 (citing *Miles v. S. Central Human Res. Agency, Inc.*, 946 F.3d 883, 896 (6th Cir. 2020) ("Even if [the employer] wanted to attract young people, that says *nothing* about

20

terminating older employees.") (emphasis in original)). This is because "merely expressing that one likes younger employees, does not, without some additional inference, mean an employer is intent on terminating older employees. The fact that an inference is necessary takes this out of the realm of direct evidence." *Id.* at 500–01.

The Court further finds that the cases cited in Turner's response brief do not support his direct evidence claim. Those cases involved alleged direct discriminatory animus and discriminatory comments made by *decisionmakers*, some close in time to the alleged adverse action, or statements that were found not to be direct evidence. *See Hannon v. Louisiana-Pacific Corp.*, 784 F. App'x 444, 448–49 (6th Cir. 2019) (statements "indisputably made by a decisionmaker" a few months before plaintiff's termination "arguably constitute direct evidence" of age discrimination even though they did not "on their face" relate to the termination decision); *Brewer v. New Era, Inc.*, 564 F. App'x 834, 839 (6th Cir. 2014) (statements by the company owner's son who "authorized" plaintiffs' layoffs that the plaintiffs were "too old" and "needed to retire," made two months before the employees were terminated constituted direct evidence); *Diebel v. L&H Res., LLC*, 492 F. App'x 523, 528 (6th Cir. 2012) (plaintiff failed to show that statements made by company president about seven months before plaintiff was laid off that he was trying to build a "younger company" and plaintiff had gotten "too comfortable" because he had been with the company for "so many years"

constituted direct evidence of discrimination); *DiCarlo*, 358 F.3d at 416–18 (alleged discriminatory comments by the "individual with decision-making authority with respect to the decision to terminate" plaintiff three weeks before plaintiff's termination constituted direct evidence), *overruled on other grounds by Gross*, 557 U.S. at 180; *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379–80 (6th Cir. 1993) (discriminatory comments by decisionmaker, corroborated by another former employee, including that he "was going to get the older employees out," constituted direct evidence).

It is undisputed that Unger was not a decisionmaker with respect to Turner's termination, and Turner fails to allege similar discriminatory ageist statements by Balchak or Farrell here—the decisionmakers in Turner's termination—at or near the time of Turner's termination that would constitute direct evidence of age discrimination. *See Geiger,* 579 F.3d at 621 ("'Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden ... of demonstrating animus.'" (alterations in original) (quoting *Bush v. Dictaphone Corp.,* 161 F.3d 363, 369 (6th Cir.1998)).

Accordingly, even if the statements alleged by Turner are believed, they do not compel the conclusion that Turner was terminated because of his age without some type of inference. Accordingly, Turner has failed to provide direct evidence of age discrimination.

### B. Indirect/Circumstantial evidence

Turner argues, in the alternative, that he can raise a question of fact as to whether Family Dollar discriminated against him and retaliated against him based on his age under the ADEA and the ELCRA and weight under the ELCRA through indirect or circumstantial evidence under the *McDonnell Douglas* burden shifting analysis.

As discussed above, courts apply the familiar *McDonnell Douglas* burden-shifting framework to discrimination claims based on circumstantial evidence under both the ADEA and the ELCRA. *Geiger*, 579 F.3d at 622, 626; *see generally McDonnell Douglas*, 411 U.S. at 802–05. Under this burden-shifting framework, the plaintiff first must establish a prima facie case of discrimination or retaliation. *Williard*, 952 F.3d at 807; *Drews*, 839 F. App'x at 1012. If he does so, the defendant must "articulate some legitimate, nondiscriminatory reason" for terminating the plaintiff's employment. *McDonnell Douglas*, 411 U.S. at 802. The onus then falls to the plaintiff to produce evidence sufficient for a jury to find that the proffered reason is "pretext designed to mask discrimination." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011).

Family Dollar does not meaningfully, if at all, argue in its motion for summary judgment that Turner cannot establish a prima facie case of age or weight discrimination, and instead only argues that Turner cannot state a prima facie claim of age- or weight-based retaliation. *See*

ECF No. 19, PageID.161–64.[1] Thus, the Court may assume, for purposes of this motion for summary judgment, that Turner established a prima facie case of age and weight discrimination under the ADEA and the ELCRA.

### 1. Prima facie case of retaliation

To state a prima facie case of retaliation under the ADEA or the ELCRA, Turner must establish that (1) he engaged in protected activity, (2) his employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against him, and (4) there was a causal connection between the protected activity and the adverse employment action. *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 489–90 (6th Cir. 2020) (citations omitted). If Turner can establish a prima facie case of retaliation, "the burden shifts to [Family Dollar] to articulate a nondiscriminatory reason for its actions." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008). "If [Family Dollar] articulates such a reason, [Turner] may then show that [Family Dollar's] stated reason is merely a pretext for discrimination." *Id.*

### a. Protected conduct

In its motion, Family Dollar first argues that Turner cannot establish his prima facie claim of retaliation because he did not engage

---

[1]    Family Dollar does argue that Turner cannot state a prima facie claim of failure to promote because of his age or weight, which will be discussed *infra*.

in protected activity. ECF No. 19, PageID.162. More specifically, Family Dollar argues that Turner's alleged complaints to his supervisors that he was offended by being called "Uncle Mike" or "Old Guy" or "Cupid" were insufficient to invoke the protections of the ADEA or the ELCRA. *Id.* But Turner has presented evidence to the contrary in the form of his declaration attached to his response brief. Turner alleges that in the months leading up to his termination, he repeatedly complained to both Unger and Balchak about the ageist remarks, jokes, and nicknames made by others, including Unger, at his expense. ECF No. 20, PageID.233–34 (citing Turner Decl. ¶¶ 26–27, 33, 71–74, ECF No. 20-2). Turner further asserts that, at the Chicago meeting immediately preceding his termination, he pleaded with Unger to stop the jokes and comments about his age and told her if she did not cease, he would report everyone to HR. *Id.* (citing Turner Decl. ¶¶ 71–74).

Turner's sworn statements sufficiently create a question of fact as to whether he engaged in protected conduct. "Title VII does not restrict the manner or means by which an employee may oppose an unlawful employment practice." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015). "Indeed, 'a demand that a supervisor cease his/her harassing conduct constitutes protected activity covered by Title VII.'" *Id.* (citation omitted) (noting that opposition to unlawful discrimination need not "be lodged with absolute formality, clarity, or precision"); *see also Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721

(6th Cir. 2008). The *Niswander* court noted that protected activity covers a broad swath of conduct, including "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII [or the ADEA or ELCRA]; and opposing unlawful acts by persons other than the employer—e.g., former employers, union, and co-workers." *Id.* at 721.

### b. Causal connection

Family Dollar next argues that even if Turner engaged in protected activity, he cannot show a causal connection between Unger's and others' comments and the decision to terminate his employment. ECF No. 19, PageID.163. To prove causation in a retaliation case, a plaintiff must show "that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013) (quotations omitted); *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 349 (6th Cir. 2021) (quotations omitted). At the prima facie stage, the burden on a plaintiff "is not onerous;" it can be met through evidence that the "adverse action was taken shortly after the plaintiff's exercise of protected rights." *Jackson*, 999 F.3d at 349. Family Dollar asserts that there is no evidence the HR representatives who recommended Turner's termination, or Balchak or Farrell, who approved Turner's termination, were aware of Turner's alleged complaints. *Id.* And even if they were aware, Family Dollar

argues that Turner cannot show that his alleged statements played any role the in the termination decision or that there is any similarly situated individual who did not engage in protected activity and was treated differently. *Id.*

Turner responds that just days after he last pleaded with Unger to stop the ageist jokes and comments, and threatened to report the discrimination to HR, Unger instigated the HR investigation of him that eventually resulted in his termination. Turner Decl. ¶¶ 71–73, ECF No. 20-2. Turner also "reminded Unger that she was also one of the ones promoting a culture of discrimination at the company." *Id.* ¶ 74. Turner has also presented evidence that at least one of the decisionmakers, Balchak, was aware of Turner's complaints of age and weight discrimination, including Unger's involvement. *Id.* ¶¶ 26–27, 33.

The Court finds, accepting Turner's allegations as true, this is sufficient to satisfy causation at the prima facie stage of Turner's retaliation claim. While a "temporal proximity [between the alleged protected activity and the adverse action] alone is generally not enough to establish the prima facie element of causation," *Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 46 (6th Cir. 2020), "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection." *Mickey*, 516 F.3d at 525; *see also Robinson v. Quicken Loans, LLC*, No. 21-1392,

2022 WL 4234072, at *7 (6th Cir. Sept. 14, 2022) (noting however that "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."). In such cases, the adverse employment action is often taken just days or weeks after the employee's protected activity. *See Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 305–06 (6th Cir. 2012) ("A lapse of two months … is sufficient to show a causal connection, and the district court erred in holding otherwise."); *see also Mulaj v. Sweeping Corp. of Am.*, 728 F. Supp. 3d 672, 683 (E.D. Mich. 2024) (finding that a lapse of "less than two months … between Mulaj's last report of Hammond's harassment to management and his termination … likely sufficient on its own to satisfy causation.").

### 2. Pretext for age and weight discrimination and retaliation

Assuming Turner's age and weight discrimination and retaliation claims survive at the prima facie stage, the burden then shifts to Family Dollar to proffer a legitimate, non-discriminatory reason for terminating Turner's employment. Family Dollar sought to do so by presenting evidence that it terminated Turner because, after conducting an investigation that included interviewing 11 employees and Turner, it concluded that Turner had engaged in unprofessional behavior while

attending the Chicago meeting in May 2023—behavior that violated Family Dollar's code of conduct and its anti-harassment policies.

As a result of its investigation, Family Dollar determined that "[i]t was substantiated that Michael Turner acted unprofessionally and did not demonstrate company values with Pepsi-Frito-Lay Vendor Jennifer on May 16, 2023," that this behavior "is not abnormal for [Turner]," and that Turner's allegations that the Zone Team was "completely hammered" and made inappropriate comments, and that Darlene May made inappropriate comments and used vulgar language, were not substantiated. ECF No. 19-5, PageID.186. Members of the HR staff recommended that Turner be "[t]erminat[ed] for violation of [Family Dollar's] Code of Business Conduct and the Anti-Harassment, Non-Discriminations and Non-Retaliation Policy," *id.*, and Balchak and Farrell approved Turner's termination. ECF No. 19-10, PageID.211.

Turner does not dispute that Family Dollar sufficiently articulated a non-discriminatory reason for his termination, but he argues that he has sufficient evidence to show that Family Dollar's stated reasons were a pretext for age and weight discrimination and retaliation. A plaintiff satisfies this burden at summary judgment by providing enough evidence for a reasonable factfinder to reject the employer's proffered reason. *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021).

A plaintiff can prove pretext by showing that the defendant's proffered reason: "(1) had no basis in fact; (2) was insufficient motivation

for the employment action; or (3) did not actually motivate the adverse employment action." *Id.* (quotation omitted). "The three-part test need not be applied rigidly. Rather, '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). "Whichever method the plaintiff employs, he always bears the burden of producing sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against him." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (citation, quotation, and alterations omitted). "This burden is not heavy, though, as summary judgment is warranted only if no reasonable juror could conclude that the employer's offered reason was pretextual." *George v. Youngstown State Univ.*, 966 F.3d 446, 462 (6th Cir. 2020) (citations omitted).

Turner argues that there are multiple reasons to doubt that the HR investigation was the real reason for his termination, and to doubt the motivations behind his supervisors initiating the investigation in the first place. Turner asserts that Balchak was the person who contacted HR at Unger's request to initiate the investigation into Turner. However, Turner claims that Balchak told him as he was terminating him that he knew the allegations concerning Turner's conduct at the Chicago meeting by Unger and other employees were false, and Balchak agreed with

30

Turner's contention that Unger made up the allegations because she was afraid Turner was going to report her inappropriate and discriminatory conduct to HR. ECF No. 20, PageID.231 (citing Turner Decl. ¶¶ 100–03), ECF No. 20-2. Balchak denies making these statements, and states in his declaration that he believed the HR investigation to be true and consistent with Turner's past behavior. Balchak Decl. ¶ 8, ECF No. 21-2. However, the Court cannot resolve this disputed evidence and, for purposes of this summary judgment motion, the Court must take Turner's allegations as true. A reasonable juror could find from this evidence that Turner's alleged conduct at the Chicago meeting was not the real reason for his termination.

Turner also asserts that he has raised questions regarding the HR investigation itself, claiming that HR investigators refused to interview witnesses he proposed—"such as Ira Wilson and Shawn Malone"—who he claims would have supported his version of events that he was never unprofessional and that others were. ECF No. 20, PageID.232 (citing Turner Decl. ¶¶ 90–92, ECF No. 20-2). He also complains that the investigation omitted his allegations regarding the biases of the people who instigated the investigation (Unger and Balchak), and thus the investigation was incomplete and tainted. *Id.* PageID.232 (citing Turner Decl. ¶¶ 90–93, ECF No. 20-2). Family Dollar responds that these contentions fail to demonstrate pretext because the report includes the fact that Turner's allegations were investigated but not substantiated.

Family Dollar argues that Turner's allegations fail to raise a question of fact as to Family Dollar's reliance on the facts it honestly believed to be true at the time of Turner's termination.

The report summarizing the investigation is not so convincing as Family Dollar would suggest. It contains interviews showing general support from witnesses that Turner's interactions with some of the vendors at the Chicago meeting were described as "aggressive," "inappropriate," or "rude," but only about half of those interviewed stated that Turner used profanity or acted inappropriately with the vendor who was late to her presentation. Meanwhile, the rest did not recall Turner acting inappropriately, yelling, or engaging in alarming behavior towards this vendor, with one employee describing Turner's behavior as "very vocal and straightforward." ECF No. 19-5, PageID.180–83. Only three of the 11 witnesses interviewed stated that they heard Turner speak disparagingly about the VOICE survey. The others were either not present or unable to recall, and only two affirmed that there was a "heated exchange" between Turner and Regional Director Eckles, with the remainder stating they either didn't witness the exchange, or that it was not alarming or it was "heated on both sides." *Id.* PageID.183–85. Only Darlene May affirmatively stated that Turner said to her "professionally speaking, you're beautiful," with the remaining witnesses not present or only reporting that someone else told them Turner made the statement, and May stated that "she did not take offense" to Turner's

comment. *Id.* PageID.185. Finally, only two witnesses of the eleven testified to seeing Turner make an inappropriate gesture mocking mentally disabled persons, with one stating that "this was pretty normal of his and Jacob's banter." *Id.* PageID.185–86. Surprisingly, Jacob "[w]as not asked" about this exchange he reportedly participated in. *See id.* PageID.185.

Turner also asserts that three of his younger coworkers—Blausey, Eckles, and Jackson—were "highly intoxicated" and acting erratically at the Chicago meeting, but Unger, who observed this behavior by these employees, did not discipline them. ECF No. 20 PageID.231–32 (citing Turner Decl. ¶¶ 78–81, 86–89). He asserts that Unger instead blamed him for the other younger employees' "irresponsible and unprofessional behavior" to protect those younger employees. *Id.* He further contends that heavy drinking and loud arguments are commonplace at this type of company event. *Id.* PageID.232.

Family Dollar disputes that this evidence establishes pretext. It insists that it properly relied on the facts as it believed them to be at the time Turner's employment was terminated. Family Dollar argues that just because an employee allegedly made an inappropriate comment in the past does not mean that employee did not witness Turner's alleged conduct at issue in the investigation. Further, Turner's alleged misconduct was witnessed by more than just the three individuals Turner accuses of making ageist or weight-related comments. However,

as discussed above, many of the allegations against Turner were only supported by a few witnesses, with the majority of witnesses either not observing, recalling, or confirming that behavior. And the report was initiated by Unger and Balchak, to whom Turner had complained of age and weight-based discrimination, and only days after Turner asserts he told Unger that he was going to report the employees and Unger to HR if she did not stop the jokes and comments about his age and weight.

In addition to these questions regarding the HR investigation, Turner points to the discriminatory ageist and weight-based jokes and comments by coworkers and by Unger during his employment, including leading up to his termination, as evidence of an ageist discriminatory atmosphere at Family Dollar. He points out that some of the people making allegations against him in the investigation were the same individuals who had been harassing him about his age and weight, including Unger. Discriminatory comments, in addition to establishing a prima facie showing, can in some circumstances also show pretext. *Compare Willard*, 952 F.3d at 813 (repeated and unambiguous comments by decisionmakers directed at plaintiff that he was "old and fat," "over-the-hill," and calling him a "dinosaur" and "grandpa," were sufficient evidence of pretext); *with Blizzard*, 698 F.3d at 287 (noting "discriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext,'" but that comments that "most of the people here are the old people like you," that the employee had been "in

34

his job too long," and that he was "lazy and didn't work," were insufficient to establish pretext, even though directed at the employee at issue, when the speaker was not a nondecisionmaker); *see also Vincent v. Brewer Co.*, 514 F.3d 489, 498 (6th Cir. 2007) ("This court has held that discriminatory remarks may serve as evidence of pretext because they indicate the presence of animus toward a protected group."). The Sixth Circuit has explained that "conduct of a nondecisionmaker may be probative of whether an adverse action directed at a plaintiff" occurred under circumstances supporting an inference of discrimination. *Rachells v. Cingular Wireless Emp. Servs., LLC*, 732 F.3d 652, 665 (6th Cir. 2013). "Discriminatory statements made by individuals occupying managerial positions," such as Unger, moreover, "can be particularly probative of a discriminatory workplace culture." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009).

The Court notes that Turner states that both Unger and Balchak, who approved his termination, were aware of his prior complaints of inappropriate and discriminatory age- and weight-based comments and jokes, including those by Unger. And Turner asserts that he told the HR representatives when they were conducting the investigation that Unger was fabricating charges against him to cover up her own and others' discriminatory treatment of him, and ignoring his allegations of discrimination. And yet, Turner points out, HR included none of his allegations in their report. Turner Decl. ¶¶ 90–91, 93, ECF No. 20-2.

Considering all the above, even if Turner's arguments against the HR investigation fail to completely establish that Family Dollar had no factual basis for Turner's termination, they nevertheless provide evidence of pretext. They raise questions as to Family Dollar's actual motivation for terminating Turner, especially given the proximity in time between his complaint to Unger that if she didn't stop the discriminatory jokes and comments directed toward him he would report her and his coworkers to HR, and her instigation of the investigation against him.

At this stage, Turner "does not need to prove pretext; []he only needs to show that the question of pretext is a genuine factual dispute." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 667 (6th Cir. 2020). When viewed in the light most favorable to Turner, there is sufficient evidence for a juror to infer that Family Dollar's proffered nondiscriminatory justification did not actually motivate its decision to terminate Turner. The record, viewed in the light most favorable to Turner, reveals a climate of discriminatory remarks, comments, and jokes directed toward Turner based on his age. Turner can point to inconsistencies in Family Dollar's investigation as well as evidence of potential animus from which a reasonable juror might find pretext for age discrimination or retaliation.

The Court must therefore **DENY** Family Dollar's motion for summary judgment as to Turner's *age* discrimination and retaliation claims under the ADEA and ELCRA.

But the analysis regarding discrimination based on weight under ELCRA bears a different outcome. There, because the Court finds that Turner has only proffered isolated remarks based on his weight, the Court must **GRANT** Family Dollar's motion for summary judgment as to Turner's weight-based discrimination and retaliation claims under the ELCRA.

### C. Failure to Promote Due to Age or Weight

Turner also alleges that Family Dollar unlawfully denied him a promotion. Turner asserts that he became aware of an available VP position within the company in 2021 and informed Balchak and Farrell that he wanted to apply for the position. Turner Decl. ¶¶ 55–56, ECF No. 20-2. When Turner asked Farrell about the procedure to apply for the position, Farrell told him he did not need to apply because he was already being considered for the position and would be interviewed when interviews began. *Id.* ¶¶ 56–57. In addition, Balchak told Turner that he was on the top of the list of candidates for the VP position because he was the best person for the job. *Id.* ¶ 58. However, Family Dollar never interviewed Turner for the VP position and instead promoted two employees—Tania Phillips and Doug Lambert—to the VP position in 2022. *Id.* ¶ 59. Turner asserts that Phillips and Lambert are in their 30's and 40's, and Phillips lacks a four-year degree from an accredited university, while Turner has a Bachelor's degree in Business Administration and over 25 years of high-level retail experience. *Id.*

¶¶ 60–61. In addition, Turner states that he had responsibility for training Phillips and Lambert over the last two to three years. *Id.* ¶ 62. When Turner asked Balchak why he did not get the promotion, Balchak responded that Barnett wanted to go in a "younger" direction. *Id.* ¶ 63.

To establish a prima facie case on a failure-to-promote claim, Turner must present evidence that (1) he belongs to a protected class, (2) he applied for and was qualified for the position, (3) he was considered for and denied the promotion, and (4) an individual of similar qualifications who was not a member of the protected class received the promotion." *Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518, 524 (6th Cir. 2015) (construing ELCRA failure-to-promote claim); *Provenzano*, 663 F.3d at 812–13 (ADEA claim). Turner's "burden at the prima facie stage is 'not onerous' and 'poses a burden easily met,'" and "is meant simply to force a defendant to proceed with its case." *Provenzano*, 663 F.3d at 813 (internal and end citations omitted).

Family Dollar argues that Turner's failure-to-promote claims fails at the second prong of his prima facie case because he never applied for a promotion to the VP position. Family Dollar further argues that because Turner never applied, he cannot show that Family Dollar's reasons for giving the position to another person were a pretext for age or weight discrimination. ECF No. 19, PageID.161.

While an employee must generally apply for a promotion to bring a failure to promote claim, the Sixth Circuit recognizes two situations

38

where a plaintiff's failure to apply for a position is not fatal to his case. One situation is where an employer's history of "gross and pervasive discrimination" has created an "atmosphere of futility" in which "employees understand that their applying for certain positions is fruitless." *See Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989) (citation omitted) (citing *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 367–68 (1977)). The other is where an employer "promotes employees into the position[ ] in question without asking for applications or posting the opening so that employees could apply for the position[ ]." *Wanger*, 872 F.2d at 146 (citation omitted). In the latter scenario, a plaintiff need only show that "had []he known of an ... opening, []he would have applied." *Id.*; *see also Russell v. Three Pillars, Inc.*, No. 21-1481, 2022 WL 351770, at *5 (6th Cir. Feb. 7, 2022) (same, addressing a plaintiff's failure-to-promote claim under the ELCRA).

This case presents a slight twist on the second *Wanger* scenario. Turner asserts that he was expressly told by Balchak and Farrell that he did not need to apply for the VP position because he was already being considered for the promotion. He therefore had no reason to formally apply. While Family Dollar disputes this, the Court must accept Turner's allegations as true for purpose of this motion for summary judgment. Family Dollar has not presented any evidence of a formal application policy for the VP position that Turner failed to utilize. Accordingly,

Turner's failure to apply for the VP position is not fatal to his failure-to-promote claim. *See Wanger*, 872 F.2d at 146.

Family Dollar otherwise does not offer any argument disputing Turner's contention that two individuals chosen for the VP position were younger than he was or that they did not possess the same qualifications as he did. Turner therefore has presented a prima facie case for his failure-to-promote claim. Further, Turner asserts that he was told that he did not receive the promotion because Barnett wanted to go in a "younger" direction—thereby supporting his contention that he did not get the promotion because of his age. Turner Decl. ¶ 63, ECF No. 20-2. While Family Dollar disputes this, the Court must accept Turner's statements as true. Family Dollar otherwise fails to develop any argument against the position that its reasons for giving the VP position to another person were a pretext for age discrimination.

Accordingly, Family Dollar's motion for summary judgment as to Turner's failure-to-promote claim is **DENIED**.

## IV.   CONCLUSION

For the reasons stated above, Family Dollar's Motion for Summary Judgment, ECF No. 19, is **GRANTED IN PART** and **DENIED IN PART**.

Family Dollar's motion is **GRANTED** as to Turner's weight discrimination and retaliation claims under ELCRA, but **DENIED** as to

40

his age discrimination and retaliation claims under the ADEA and ELCRA, and as to his failure-to-promote claim.

**IT IS SO ORDERED.**

Dated: September 3, 2025      /s/Terrence G. Berg
                             HON. TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE